# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RONALD SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CIV-06-331-KEW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Claimant, Ronald L. Sanders, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy..." Id. §423(d)(2)(A). Social

Security regulations implement a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not reweigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also Casias, 933 F.2d at 800-01.

**Claimant Background**

Claimant was born on October 19, 1954 and was 49 years old at the time of the hearing

---

[1]Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See id. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

before the ALJ. He completed his education through the eighth grade. Claimant has worked in the past as an electrician and electrical contractor supervisor. He alleges an inability to work beginning October 31, 2001 due to bone spurs, torn left rotator cuff, arthritis, depression, and pain and stiffness. His last date of insured status was through March 31, 2003.

## Procedural Background

On October 9, 2002, Claimant protectively filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, et seq.). Claimant's application for benefits was denied initially and upon reconsideration. A hearing before ALJ Richard J. Kallsnick was held on August 26, 2004 in Tulsa, Oklahoma. By decision dated September 15, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. On June 27, 2006, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and he retained the residual functional capacity ("RFC") to perform a wide range of sedentary work. Although he was unable to perform his past relevant work, the Medical-Vocational Guidelines ("GRIDS") and testimony from a Vocational Expert ("VE") were used to determine that a significant number of jobs were available in the national and regional economies that Claimant could perform.

## Review

Claimant asserts the ALJ committed error requiring reversal in failing to: (1) make a proper determination at step two of the sequential evaluation; (2) sufficiently develop the record; (3)

3

engage in a legally sufficient credibility analysis ; and (4) consider all of Claimant's physical and mental limitations in his step five determination.

**Step Two Determination**

On appeal, Claimant raises two issues at step two of the sequential evaluation. He argues that the ALJ erred by finding his mental impairments did not significantly limit his ability to perform work activities. Claimant also argues that the ALJ failed to make appropriate findings concerning the severity of his arthritis and plantar fibromatosis.

With regard to Claimant's alleged mental impairments, the ALJ found that although Claimant alleges "depression, as well as difficulty concentrating due to pain, the record indicates he has no history of ongoing treatment or inpatient hospitalization and is not taking psychotropic medications." (Tr. 17). Therefore, "claimant's alleged mental impairment is medically nondeterminable." Id. As a part of his decision, the ALJ included medical records for treatment rendered after the expiration of Claimant insured status in his discussion. (Tr. 18).

At step two, an ALJ is required to determine whether the impairments alleged by the Claimant are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii),(c); 416.920(a)(4)(11),(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a). Only "slight" impairments, imposing only a "minimal effect on an individual's ability to work" are considered "not severe:"

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered[.]

4

> Social Security Ruling 85028, 1985 WL 56856, at 3 (emphasis added.); *See also*, SSR 03-3p, 2003 WL 22813114, at 2.

Step two is designed to eliminate "at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." Bowen v. Yuchert, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). *See also*, Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004). "The mere presence of a condition or ailment" is insufficient to get the claimant past step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). However, a claimant need only make a "de minimus" showing of impairment to move on to further steps in the analysis. Langley, 373 F.3d at 1123.

After thorough review of the transcript, this Court finds substantial evidence to support the conclusion that Claimant did not meet the "de minimus" requirements for a finding of a severe mental impairment. The only evidence of a mental impairment occurred more than one year after the expiration of insured status on April 20, 2004. At that time, Claimant received treatment for a "panic attack." (Tr. 175-177). Claimant's condition was brought about by a combination of incidents wherein his wife left him and took his children and savings. He called the police and EMSA, believing he was having a heart attack but was found to be having a panic attack. (Tr. 177). No evidence appears in the record of treatment for a mental condition on a continuing basis. Based upon the evidence presented in the record, this Court cannot conclude this limited episode constitutes a severe mental impairment.

Claimant also contends the ALJ erred by failing to determine he had a severe impairment resulting from arthritis and plantar fibromatosis. However, the Claimant fails to articulate how his physical limitations are inconsistent with the RFC determination made by the ALJ. The ALJ found "that the claimant has disorders of the muscle, ligament and fascia and sprains/strains, impairments

that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 17). Claimant was found to retain the RFC "to perform a wide range of light exertional work activity. Specifically, the claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, and sit about 6 hours in an 8 hour workday. The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, kneel, crouch and crawl and frequently perform balancing and stooping. The claimant can only occasionally perform overhead reaching with his left arm." (Tr. 21).

The physical restrictions included in the ALJ's RFC determination are consistent with the medical evidence included in the record. As a result, the ALJ's conclusion concerning the severity of the condition will not be disturbed.

**Duty to Develop the Record**

Generally, the burden to prove a disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuchert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).

Claimant first alleges the ALJ should have obtained medical records from the Wagoner County Hospital and a private medical office in Tulsa. In cases such as this one, where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).

During the hearing before the ALJ, Claimant's counsel did not suggest to the ALJ that any relevant medical records were missing from the administrative record, nor did counsel request the ALJ's assistance in obtaining any additional medical records. (Tr. 210). Additionally, Claimant fails to provide any support to show that these medical records were necessary for development of any issues. When considered as a whole, the record was adequate for the ALJ to decide this case.

As a second contention, Claimant argues the ALJ erred by denying his request for a consultative examination. It is well-established that "the Secretary has broad latitude in ordering consultative examinations." Diaz v. Secretary of Health & Human Services, 898 F.2d 774, 778 (10th Cir. 1990). However, consultative examinations are required when there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive. *See*, 20 C.F.R. § 404.1519a(b)(4); Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993). An examination may also be necessary "where additional tests are required to explain a diagnosis already contained in the record." Hawkins v. Chater, 113 F.3d 1161, 1166 (10th Cir. 1997).

In this case, Claimant has failed to establish any conflicting or inconclusive evidence of mental impairments requiring resolution by the use of a consultative examination. As previously discussed, the only evidence of possible mental health treatment occurred outside the date of insured

7

status and was of a minor nature. The ALJ did not err by rejecting Claimant's request.

## Credibility Determination

Claimant also contends that the ALJ made several errors in evaluating his credibility. He contends that the ALJ improperly ignored or failed to discuss aspects of the consultative examiner's report which supported a finding of disability. He also argues the ALJ's discussion of Claimant's testimony was insufficiently tied to the evidence relevant to each factor of the credibility analysis.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

> The ALJ discussed Claimant's testimony at the hearing. He concluded that:
>
> the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical evidence in the file. The

claimant's statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms and objective documentation in [the] file. The physical findings and supporting clinical data do not closely corroborate or correlate with the claimant's subjective complaints. The claimant has also not provided convincing details regarding factors that precipitate the allegedly disabling symptoms, claiming that the symptoms are present constantly or all of the time. Additionally, the claimant's description of the severity of the pain has been so extreme as to appear implausible. It must also be noted that the record does not contain any opinion from treating or examining physicians indicating that the claimant is disabled or that he has limitations greater than those determined in this decision. Although the claimant has described daily activities, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in the decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by other factors discussed in this decision.

Although the claimant has received treatment for his alleged disabling impairments, as evidenced by the record, that treatment has been essentially routine and conservative in nature.

(Tr. 20-21).

On January 9, 2003, Claimant was evaluated by Dr. Marcelo R. Perez-Montes who found he had a decreased range of motion in the left knee and the left shoulder. (Tr 139). He opined "[t]he claimant's primary complaints appear to be centered around that of chronic left shoulder as well as left knee and ankle pain secondary to an old injury." He concluded that "[i]t is unclear as to the current etiology of the claimant's present complaints." (Tr. 140). The consultative examiner (the "CE") also noted upon examination that Claimant was unable to perform heel and toe walking. (Tr. 144).

On appeal, Claimant argues that the ALJ's credibility findings are flawed based on the failure to discuss this report and the physical examination conducted by the CE. While the ALJ did not

9

explicitly discuss Claimant's failure to perform heel and toe walking, that omission does not serve as a basis for remand. Further, the CE's commentary concerning the etiology of present complaints does not mandate discussion by the ALJ within the credibility analysis. An ALJ is not required to discuss every piece of the evidence so long as the record demonstrates that he considered all of the evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The record demonstrates the ALJ sufficiently considered and discussed the relevant evidence to support his decision.

### RFC Assessment

After finding that Claimant's RFC precluded him from performing any of his past relevant work, the ALJ proceeded to step five, where the burden of proof shifted to the Commissioner "to show that the claimant retain[ed] sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." Hackett v. Barnhart, 395 F.3d 1168, 1171 (10th Cir. 2005). Relying on testimony from a vocational expert (the "VE"), the ALJ found Claimant could perform the jobs of cleaner, retail attendant, labeler, and sorter in the national economy. (Tr. 22-23). Claimant contends the jobs relied on by the ALJ satisfies the burden at step five.

The ALJ determined Claimant retained the RFC "to perform a wide range of light exertional work activity." (Tr. 21). He found at the time relevant to his determination that "claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday and sit about 6 hours in an 8 hour workday. The claimant can occasionally climb ramps, stairs, ladders, ropes and scaffolds, kneel, crouch, and crawl and frequently perform balancing and stooping. The claimant can only occasionally perform overhead reaching with his left arm." Id.

After a thorough review of the transcript, this Court finds the ALJ's work capacity

assessment is consistent with the evidence. Claimant's argument that the non-treating, non-examining physician report precluded reaching in any direction is misplaced. Rather, the non-treating, non-examining physician placed restrictions on reaching in all directions, including overhead. However, Claimant was found to be able to occasionally reach overhead, which is consistent with the ALJ's findings. (Tr. 163). Additionally, as previously discussed, Claimant failed to satisfy his burden to show that he had limitations from mental impairments during the period of insured status.

Claimant's final argument asserts the ALJ erred by failing to include consideration under the Medical-Vocational Guidelines ("GRIDS") in a category of "closely approaching advanced age" where he was within one month of his 50th birthday at the time of the decision. Notably, Claimant was 48 years of age on the last date of his insured status. Claimant has failed to provide any citation of authority requiring the ALJ to consider this matter under the GRIDS using an age after the expiration of his insured status. Consequently, this allegation will not be addressed further.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied, therefore, the ruling of the Commissioner of Social Security Administration is AFFIRMED.

DATED this 2nd day of July, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE